# UNITED STATES et al. v. ILLINOIS CENTRAL RAILROAD CO. et al.

No. 422.  Argued February 8, 9, 1934.—Decided March 5, 1934.

*Assistant Solicitor General MacLean,* with whom *Solicitor General Biggs, Assistant Attorney General Stephens,* and *Messrs. Elmer B. Collins, Ashley Sellers, Daniel W. Knowlton,* and *Harry L. Underwood* were on the brief, for the United States and Interstate Commerce Commission, appellants.

458

*Mr. A. K. Shipe* for American Barge Line Co. et al., appellants.

*Mr. Clark C. Wren* filed a brief on behalf of the Inland Waterways Corp., appellant.

*Messrs. R. S. Outlaw* and *H. H. Larimore*, with whom *Messrs. Elmer A. Smith, A. B. Enoch, M. G. Roberts, M. Carter Hall, A. H. Kiskaddon, James Stillwell, Herbert S. Harr* and *M. B. Pierce*, were on the brief, for appellees.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit brought by the Illinois Central Railroad Company and other railroad carriers, under the Urgent Deficiencies Act of October 22, 1913, U.S.C., Title 28, § 47, as amended by the Act of February 13, 1925, U.S.C., Title 28, § 345, to set aside, annul and enjoin the enforcement of an amended order of the commission, made under § 3 (e) of the Inland Waterways Corporation Act of June 3, 1924, c. 243, 43 Stat. 360, as amended, c. 891, § 2, 45 Stat. 978. That section provides that any person, etc., about to engage in conducting a common carrier service upon certain designated waters may, upon application to the commission, obtain a certificate of public convenience and necessity in accordance with § 1 of the Interstate Commerce Act; and that the commission " shall thereupon, by order, direct all connecting common carriers and their connections to join with such water carrier in through routes and joint rates," and shall, in such order, " fix reasonable minimum differentials between all rail rates and joint rates in connection with said water service," etc. The commission is further authorized to require the interested common carriers to enter into negotiations for the purpose of establishing equitable divisions

of these joint differential rates, and if they are unable to agree within a time specified in the act, the commission shall determine and establish reasonable divisions to become effective coincident with the effective date of the joint rates. The act further authorizes the commission, upon complaint, at once, and if it so orders, without answer or other formal pleading, but upon reasonable notice, to enter upon a hearing concerning the reasonableness or lawfulness of any through route or joint rate filed pursuant to such order of the commission, etc., and after full hearings to " make such order with reference to any such matters as it may find to be proper and in the public interest." The burden of proof in such case is put upon the carrier or carriers making the complaint, and preference is to be given to the hearing and decision of the questions involved over -all other questions pending before it, except where like preference is given by law; and the commission is directed to render a decision as speedily as possible.

Upon application under this section, the commission, after a hearing confined to that application, granted to the American Barge Line Company, a certificate of public convenience and necessity, Application of American Barge Line Co., 182 I.C.C. 521; and thereupon, without further hearing, entered an order directing the interested carriers to establish through barge-rail routes and rates. Subsequently, in August or September, 1932, because of competition from unregulated truck and water carriers, the railroad carriers published all-rail carload rates on cotton lower than those previously in effect. These rates were further reduced in November, 1932. But the railroad carriers declined to join in joint water and rail rates; and, thereupon, the Barge Line sought from the commission supplemental orders requiring the establishment of rail-barge-rail rates between designated points. The rail

carriers opposed the application and requested a hearing before action by the commission. This hearing the commission refused, and entered an order requiring the rail carriers to join with the Barge Line in publishing specified rail-barge-rail rates on cotton in carloads. The order, particulars of which need not be stated, was issued December 10, 1932, to become effective on January 25, 1933, which time was afterwards extended to June 1, 1933, a period altogether of nearly six months from the date of issue.

Appellees, on February 2, 1933, before the order had become effective, brought this suit and sought relief from the order, upon the grounds (1) that it was made without according them a full and fair hearing, and that § 3 (e) of the statute, in so far as it authorizes the commission to make and enforce the order without such hearing, contravenes the due process of law clause of the Fifth Amendment; and (2) that it also constitutes a delegation to the commission of legislative power. The court below held with appellees upon the first ground, and entered a decree enjoining, setting aside, annulling and suspending the order of the commission. 3 F.Supp. 1005.

1. Assuming that the order in question, if enforced, would have the effect of depriving appellees of property or of property rights, we first inquire whether the statute, as interpreted and applied by the commission, does have the effect of denying appellants a full and fair hearing in respect of the matter prior to the enforcement of the order, and, consequently, fails to satisfy the constitutional requirement of due process of law. The provision of the statute that a certificate of public convenience and necessity to conduct a common carrier service upon the waters designated may be obtained upon application to the commission and *thereupon* the commission shall make the order described in the statute, undoubtedly empowers the commission to make the order, in the first instance, without a hearing. The commission, however, seems never to

have held that it is not obliged upon complaint to grant a full and fair hearing after the making of the order but before putting it into effect. And both in the briefs filed on behalf of appellants, including the United States and the commission, and in the argument at the bar, the position is definitely taken that the order is tentative and the rates prescribed thereby cannot be enforced without a hearing if properly sought by appellees. The brief for the United States and the commission quotes from the concurring opinion of Commissioner Brainerd in Ex parte 94, Procedure Under Barge Line Act, 148 I.C.C. 129, 141, to this effect and adopts it as the view of the government and the commission. Upon the oral argument, in response to a direct question from the bench, this view was reiterated by the Assistant Solicitor General, his statement in effect being that the commission is bound to grant the hearing upon complaint being made by the railway carriers, and pending such hearing to postpone the effective date of the order upon a showing which is not frivolous. The conclusion of Commissioner Brainerd, thus adopted, is that if the commission issue a certificate of public convenience and necessity and enter an order without hearing, directing the establishment of through routes and joint rates and fixing reasonable minimum differentials, and later, before said rates become effective, a complaint be filed by an interested carrier, " it would then be our duty to hear said complaint and decide said matter before said rates become effective; that in the event such a hearing is not had and the matter disposed of before the effective date of said rates, it would be our further duty temporarily to suspend them until said matter is decided; . . ." And he declared that this procedure would be necessary to comply with the requirements of due process of law.

This is an admissible construction of the statutory provisions. That the order made by the commission upon

granting the certificate of public convenience and necessity is not final and conclusive is clear, since, by the affirmative provisions of the act, the railway carriers may file the through routes and joint rates pursuant to the preliminary order, and immediately, upon complaint, secure a full hearing from, and a plenary determination by, the commission. Pending that hearing, the commission is authorized to suspend the operation of the preliminary order for as long as seven months beyond the time when it would otherwise go into effect, Interstate Commerce Act, U.S.C., Title 49, § 15 (7); and it is made clear by what has already been said that upon application and proper showing the commission would consider itself bound to take such action.

The provisions of § 3 (e) with which we are dealing were enacted by Congress in an avowed effort to bring about coöperation on the part of the rail carriers with the water carriers. The report of the House Committee on the proposed legislation (H.Rept. 1537, 70th Cong., 1st Sess., pp. 5–6) recites the necessity of overcoming opposition on the part of the rail carriers in respect of through routes, joint rates, etc., without interminable delay and the heavy expense necessary to carry on proceedings before the Interstate Commerce Commission, as a necessary prerequisite to the realization of privately owned transportation service on the inland waterways of the country. Transportation Act, 1920, (U.S.C., Title 49, § 142) declares the definite policy of Congress to be " to promote, encourage, and develop water transportation, service, and facilities in connection with the commerce of the United States." *Chicago, R. I. & P. Ry.* v. *United States*, 274 U.S. 29, 36. In the light of the situation disclosed by this report and of the policy declared by the act just named, Congress evidently prescribed the course of procedure which § 3 (e) requires.

Without attempting to lay down any general rule, but confining ourselves to the statute and case in hand, we accordingly hold that it was not essential, under the due process of law clause, that a hearing should be accorded in advance of the initiating order. It is enough that opportunity was given for a full and fair hearing before the order became operative. Since no routes or rates were in existence when the order was made, that order constituted the preliminary step toward their creation, equivalent, in essence, to an *ex parte* order on the carriers to show cause why the designated routes and rates should not be established. The effect of that order was simply to put upon the rail carriers the necessity, within a comparatively brief period, of either availing themselves of the right to file the routes and rates and appear and be heard in opposition thereto (the operation of the order in the meantime being held in abeyance), or of suffering them to go into effect by default. The statute gives preference to the hearing and decision of the questions involved, and directs the commission to render a decision as speedily as possible. Congress evidently believed that the procedure thus prescribed would bring about an earlier settlement of the matter than otherwise would be the case. The various steps to be taken constitute parts of the administrative process which must be completed before the extraordinary powers of a court of equity may be invoked. *Porter* v. *Investors Syndicate*, 286 U.S. 461, 470–471.

The constitutional question raised by appellees, therefore, vanishes from the case, because the commission concedes and stands ready to grant every administrative procedural right that appellees are lawfully entitled to claim. If the preliminary order be erroneous in any particular, it is susceptible of correction by the commission upon the hearing thus provided for. It will be time enough for appellees to seek the aid of a court of equity when they

shall have fully availed themselves of this administrative remedy, and the commission shall have taken adverse action. Until then they are in no situation to invoke judicial action.

The provision of the statute which puts the burden of proof upon the carriers is not inconsistent with the due process clause of the Constitution. *New England Divisions Case*, 261 U.S. 184, 199; *Minneapolis & S. L. R. Co.* v. *Minnesota*, 193 U.S. 53, 63.

2. The precise ground upon which appellees place their contention that the statute is invalid as constituting a delegation of legislative power is not entirely clear. Undoubtedly, the statute furnishes a sufficient primary standard to govern the action of the commission; and this appellees do not dispute. Their contention, as set forth in their brief, is that the only rule of decision laid down in § 3 (e) is that the through routes, rates and differentials to be established must be reasonable and lawful, and " such reasonableness and lawfulness can be determined only by a full and fair hearing, and the establishment of rates and routes and differentials without such hearing constitutes necessarily an exercise by the Commission of pure legislative power." Since the government and the commission concede that a full and fair hearing must be accorded before the order becomes effective, this objection to the statute, as a distinct ground, necessarily falls.

*Decree reversed.*

MR. JUSTICE STONE, concurring.

I concur in the result.

The statute, in words, authorizes the Commission to grant a hearing as to the reasonableness and lawfulness of the proposed rates and divisions, if complaint is filed, and the Commission has plenary power, upon consideration of the complaint, to postpone the effective date of

the order and to suspend the rates after the order becomes effective. §§ 15·(7), 16 (6), Interstate Commerce Act.

As respondents have failed to invoke these administrative remedies by filing a complaint with the Commission, it seems plain that their rights, constitutional or otherwise, have not been infringed, and I see no occasion for speculation as to what the statutory duty of the Commission may be in .the event a complaint is filed, or to resort to concessions of counsel in brief and argument to define that duty, or to suggest that the statute falls short of constitutional requirements if it fails to command the administrative action which it permits. The mere power, unexercised, to withhold constitutional right is not a denial of it. It is enough that respondents have filed no complaint with the Commission designed to secure a hearing. Before administrative action which respondents may invoke, but have not, it cannot be said that there is any infringement of their constitutional rights to a hearing or to protection from the rates pending a hearing. Compare *Pacific Telephone & Telegraph Co.* v. *Seattle, ante,* p. 300; *Porter* v. *Investors Syndicate,* 286 U.S. 461, 470, 471.

Further, there is no intimation in the record that upon resort to the administrative remedies which the statute permits any relief to which respondents are justly and equitably entitled will be withheld. And there is no contention that the proposed rates will not yield a fair return or that they otherwise infringe constitutional rights. At most it appears that the interest sought to be protected is a prospective share in future traffic which it is feared may be diverted to the Barge Line, an interest to which the Constitution plainly affords no protection. *Edward Hines Trustees* v. *United States,* 263 U.S. 143, 148; *Atchison, T. & S. F. Ry. Co.* v. *United States,* 279 U.S. 768, 780; *Sprunt & Son* v. *United States,* 281 U.S. 249,

Thus, regardless of what the statute commands, there is no such showing of threatened denial of a hearing or of injury to a property right as would warrant resort to the equity powers of a federal court. *Vandalia R. Co.* v. *Public Service Comm'n*, 242 U.S. 255; *United States* v. *Los Angeles & St. L..R. Co.*, 273 U.S. 299, 314; *White* v. *Johnson*, 282 U.S. 367, 373; *Porter* v. *Investors Syndicate*, *supra*.

MR. JUSTICE BRANDEIS, MR. JUSTICE ROBERTS, and MR. JUSTICE CARDOZO concur in this opinion.