## Bradford Electric Co. v. Driscoll et al.

*John Y. Scott* and *Harold J. Ryan*, for plaintiff.

*Claude T. Reno*, Attorney General, and *Harry M. Showalter*, for defendants.

WICKERSHAM, J., March 15, 1939.—This case comes before us on answer of the defendants raising preliminary objections to the bill in equity.

Plaintiff supplies electric current and power in Bradford County, and is subject to the Public Utility Law of this Commonwealth. On September 20, 1938, the Public Utility Commission, defendant, assessed plaintiff $1,-085.69 for a portion of the expenses of said commission from June 1, 1937, to May 31, 1938. Attached to the bill as an exhibit was a statement of explanation and an analysis of defendants' expenses. Said assessment is made under section 1201 of the Public Utility Law of May 28, 1937, P. L. 1053, which plaintiff avers is unconstitutional in that: (*a*) It attempts to place in the Public Utility Commission power to levy taxes; (*b*) it constitutes an illegal and unconstitutional delegation of legislative power contrary to the Constitution of this Commonwealth; and (*c*) it deprives plaintiff of its property without due process of law in violation of the Constitutions of this Commonwealth and of the United States. Plaintiff avers the assessment is excessive, erroneous, unlawful, and invalid, setting forth various reasons all relating to the computation of the assessment; and claims it is without any adequate remedy at law. Plaintiff prays for injunctive relief.

To plaintiff's bill defendants filed an answer raising preliminary objections which are, inter alia, that the bill does not set forth a cause of action entitling plaintiff to the relief sought; plaintiff has not pursued all or any of its remedies before the Public Utility Commission as prescribed in section 1201 of the Public Utility Law, supra. On October 6, 1938, plaintiff filed with the commission its objections to the aforesaid assessment. No hearing has been held by the commission upon such objections; nor has the commission recorded upon its minutes its findings on the objections, nor notified plaintiff of any amount charged against it in accordance with such findings. Under the provisions of paragraph (*c*) of section 1201 of the Public Utility Law, the amount assessed against plaintiff need not be paid until 10 days

after receipt of notice of the findings of the commission with respect to the validity of plaintiff's objections, and no such findings have ever been made by the commission. No attempt or threat has been made to enforce the collection from plaintiff of said assessment or any part thereof, nor can such collection be enforced until the commission shall record findings overruling the objections filed by plaintiff. Defendants also refer to paragraph (*e*) of section 1201 of the Public Utility Law, and pray for the dismissal of plaintiff's bill.

## *Discussion*

Section 1201 of the Public Utility Law of 1937 provides in paragraph (*a*) for the assessment upon persons and corporations subject to the act of certain general expenses of the commission; paragraph (*b*) makes corresponding provision for the assessment of expenses incurred by reason of special investigation. Paragraph (*c*) is as follows:

"The commission shall give notice by registered mail to each person or corporation of the amount lawfully charged against him or it under the provisions of this section. Within fifteen days after receipt of such notice, the party against which such assessment has been made may file with the commission objections setting out in detail the grounds upon which the objector regards such assessment to be excessive, erroneous, unlawful or invalid. The commission, after notice to the objector, shall hold a hearing upon such objections. After such hearing, the commission shall record upon its minutes its findings on the objections and shall transmit to the objector, by registered mail, notice of the amount, if any, charged against him in accordance with such findings. Each person or corporation shall pay the amount of any such assessment to the commission within thirty days after receipt of notice of such assessment, unless objections are filed thereto, in which case such assessment shall be paid within ten days after receipt of notice of the find-

ings of the commission with respect to such objections. If payment is not made as aforesaid, the commission, through the Department of Justice, may institute an appropriate action at law for the amount lawfully assessed, together with any additional cost incurred by the commission or the Department of Justice by virtue of such failure to pay."

Paragraph (d) forbids any suit to restrain the collection of assessments, but provides that any person objecting to payment may, in addition to filing objections as set forth above, sue the Commonwealth at any time within two years after paying the assessment, and may in such suit "raise every relevant issue of law" in the action for a refund. Paragraph (e) is as follows:

"The provisions of this act relating to the judicial review of orders and determinations of the commission shall not be applicable to any findings, determinations, or assessments made under this section. The procedure in this section providing for the determination of the lawfulness of assessments and the recovery back of payments made pursuant to such assessments shall be exclusive of all other remedies and procedures."

Defendants contend that plaintiff's action is premature in that plaintiff has not exhausted the legal and administrative remedies expressly provided by the statute under which the assessment was made. We think it has been firmly established that before equity will intervene on behalf of any party aggrieved by an order of an administrative body all remedies available before the administrative body itself and provided by statute must be exhausted. ". . . one who desires to avail himself of the equity side of the court, must first exhaust his legal remedies, if he has any": Harrisburg Dairies, Inc., et al. v. Eisaman et al., 46 Dauph. 204.

In the Eisaman case the Milk Control Commission issued a general order and, although the Milk Control Act provides for an appeal (and plaintiff there filed such an

appeal), a bill in equity was brought to enjoin the enforcement of the order. Defendants objected preliminarily to the bill on the ground that plaintiff had not exhausted the remedy provided by statute for persons aggrieved by orders of the commission. It was held that the objection was well taken and the bill was dismissed, it being pointed out that if the commission committed an error it should be corrected by the statutory remedy of review in the common pleas court.

Colteryahn Sanitary Dairy v. Milk Control Comm. of Pa., 332 Pa. 15, 23, also declares the rule contended for by defendants here by stating:

"It is well settled under the Act of March 21, 1806, P. L. 558, section 13, that where statutory remedies are provided, the procedure prescribed by the statute must be strictly pursued, to the exclusion of other methods of redress. *Bowman v. Gum, Inc.*, 321 Pa. 516; *Commonwealth ex rel. v. Margiotti*, 325 Pa. 17, 32. This is particularly true of special statutory appeals from the action of administrative bodies."

In the case at bar, the Public Utility Law provides in plain terms that if a person or corporation against whom an assessment is made feels aggrieved at the same, he may file objections to the assessment with the commission (which this plaintiff has done). The act thereupon commands that the Public Utility Commission must hold a hearing and render findings upon the objections. Furthermore, the time for payment is automatically postponed until 10 days after receipt by plaintiff of such findings. We think plaintiff cannot ask the chancellor to intervene on its behalf before availing itself of this statutory remedy. How can plaintiff set in motion the machinery for review and possible correction before the commission and then seek equitable relief before such review has been completed? Under section 1201(c) plaintiff can file objections on the broad grounds that the "assessment is excessive, erroneous, unlawful, or invalid". These

grounds are sweeping enough to allow any conceivable attack by plaintiff against the assessment in a proceeding before the Public Utility Commission itself. We think there is no reason to assume in advance that the Public Utility Commission will act in violation of the Constitution or statutes of this Commonwealth. It is hornbook law that if any presumption exists it is that the administrative body will act lawfully.

We think the whole question raised by defendants' present answer was considered in the case of Natural Gas Pipeline Co. v. Slattery et al., 302 U. S. 300, where it was held (p. 310) :

"The rule that a suitor must exhaust his administrative remedies before seeking the extraordinary relief of a court of equity . . . is of especial force when resort is had to the federal courts to restrain the action of state officers".

In this case, the Illinois Commerce Commission issued an order directing plaintiff to make available certain information to the commssion. Plaintiff was a foreign corporation selling gas in interstate commerce, at wholesale, to an Illinois company which was then under investigation by the commission. Plaintiff resisted the order on the ground that it was beyond the commission's jurisdiction, and sought by bill in equity in the Federal district court to restrain the enforcement of it. Several grounds were urged by plaintiff, but in a unanimous opinion the United States Supreme Court ordered the bill dismissed and held (p. 309) :

"We have no occasion to consider the merits of these objections. It suffices to say that the statute itself provides an adequate administrative remedy which appellant has not sought. By §§64 and 65 of the Act the commission was authorized on its own motion or on application of appellant to order a hearing to ascertain whether the present order was 'improper, unreasonable or contrary to law.' Section 67 authorizes the commis-

sion at any time, upon proper notice and hearing, to 'rescind, alter or amend any . . . order or decision made by it.' We see no reason, and appellant suggests none, for rejecting the trial court's ruling that the commission, if asked, could have modified its order, or for concluding that the commission was without authority to suspend or postpone the date of the effective operation of the order so as to avoid the running of penalties, pending application for its modification."

The Act of March 21, 1806, 4 Sm. L. 326, sec. 13, provides:

"That in all cases where a remedy is provided or duty enjoined, or any thing directed to be done by any act or acts of Assembly of this commonwealth, the directions of the said acts, shall be strictly pursued, and no penalty shall be inflicted or any thing done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect."

This statute was referred to as recently as in the Colteryahn case, supra, and in Ermine v. Frankel et al., 322 Pa. 70.

In United States et al. v. Illinois Central R. R. Co. et al., 291 U. S. 457, 463, a case similar to the one at bar, the Supreme Court dismissed the bill on the ground that the railroad company had not pursued its remedies with the commission, Mr. Justice Sutherland stating:

"The constitutional question raised by appellees, therefore, vanishes from the case, because the commission concedes and stands ready to grant every administrative procedural right that appellees are lawfully entitled to claim. If the preliminary order be erroneous in any particular, it is susceptible of correction by the commission upon the hearing thus provided for. It will be time enough for appellees to seek the aid of a court of equity when they shall have fully availed themselves of this administrative remedy, and the commission shall have

taken adverse action. Until then they are in no situation to invoke judicial action."

In Porter, Auditor, v. Investors Syndicate, 286 U. S. 461, 471, the same rule was applied. In dismissing a bill in equity filed to enjoin the enforcement of an administrative order, Mr. Justice Roberts said:

"As we have seen, under the Montana statute the administrative proceeding is not complete until the court shall have acted in revision and correction of the commissioner's decision. It would be strange indeed if the commissioner's action thus subject to alteration were nevertheless to be made as effective to harm the parties in interest as if no further administrative procedure existed. We can not so read the act in the absence of clear and unambiguous phraseology requiring that course, or of a decision of the state court so construing it."

In view of the explicit terms of section 1201(c) of the Public Utility Law, we think the foregoing authorities are directly applicable and relevant, and indicate that until plaintiff exhausts its remedies before the commission, as provided for in the act, the bill in equity will not lie.

Defendants also contend that plaintiff's bill does not set forth a cause of action for the equitable relief sought. Apparently the sole ground on which plaintiff relies to secure the extraordinary remedy sought is the provision in section 1201(d) that suits to restrain the commission from collecting the assessment are forbidden, and that persons making payment to the commission are authorized to sue the commission for a refund. Plaintiff avers that since the refund is payable from the current appropriation of the commission there may never be a fund available to pay any judgment obtained, and hence the need for equitable intervention.

An examination of the section of the act complained of by plaintiff discloses that the sole danger or harm which plaintiff faces for nonpayment of its assessment is an action at law for the amount lawfully assessed,

together with the costs of such suit. We think this does not show the present danger and irreparable harm necessary to invoke the intervention of equity, more particularly in view of the express prohibition of a restraining suit and the provision for other remedies.

It is to be noted that the Department of Justice is authorized to institute an action for the amount lawfully assessed. The act thus restricts the commission and the Commonwealth from collecting any sum or assessment which would be in violation of the laws of this Commonwealth or of the United States, and therefore we see no reason why plaintiff could not resist an action for payment of any sum assessed on the ground that the assessment was improper or unconstitutional.

Hagar v. Reclamation District No. 108, 111 U. S. 701, concerned a program of swamp reclamation, the legislature of California providing among other things for the assessment of the cost of such work on the owners of land in the districts benefitted, and that if an assessment were not paid, suit would be brought in the courts of the State, charging the land of the delinquent with a lien and selling such lands to satisfy the charges. Plaintiff resisted an action to charge his land with an assessment on the ground that the statute violated the Fourteenth Amendment. The United States Supreme Court held (p. 711):

"The assessment under consideration could, by the law of California, be enforced only by legal proceedings, and in them any defence going either to its validity or amount could be pleaded. In ordinary taxation assessments, if not altered by a board of revision or equalization, stand good, and the tax levied may be collected by a sale of the delinquent's property; but assessments in California, for the purpose of reclaiming overflowed and swamp lands, can be enforced only by suits, and, of course, to their validity it is essential that notice be given to the tax-payer and opportunity be afforded him to be

heard respecting the assessment. In them he may set forth, by way of defence, all his grievances."

In plaintiff's bill it asks that the commission be restrained from enforcing the collection of the assessment made against plaintiff for the reason that plaintiff is compelled to make payment of such assessment to the commission, and plaintiff has no asurance that it will ever secure a refund should the assessment be invalid. Defendants contend that this prayer in plaintiff's bill is no ground for equitable relief, for no such compulsion exists until after an action at law for the assessment; and that at the time the bill in equity was filed, and continuously since then, plaintiff has not been under any obligation to pay the commission or the Commonwealth anything. Under the statute, the objections filed with the Public Utility Commission automatically suspend payment of the assessment. Plaintiff is not even required to post a bond; nor is there any possibility of the imposition of interest or penalties. So far as plaintiff is concerned, if its objections to the constitutionality of the assessment are well taken, plaintiff will never be asked to pay such assessment or even to defend an action thereon. And if the Public Utility Commission should rule adversely to plaintiff it nevertheless has 10 days to decide whether it wishes to litigate the question in common pleas court, by paying and suing for refund, or defending an action brought to collect the amount due. We think no ground for equitable intervention is averred in the present bill because no claim has been or can be asserted or enforced against plaintiff by the commission or the Commonwealth.

As already stated, plaintiff seeks an injunction because it claims that it will be compelled to pay the assessment levied against it and to seek a refund which, if payable, shall be made from the current appropriation of the commission. Plaintiff contends it has no assurance that there will be in existence any fund from which such judgment can be paid, nor even that the commission itself will then

be in existence. We think plaintiff's fears are without any real basis. It is to be noted that the statute does not require any special act to pay judgments which plaintiff and others similarly situated may obtain. Nor is plaintiff restricted to the appropriation for a particular year. The act merely refers to the current appropriation for the commission. It is improbable that after 25 years this commission or a similar regulatory body will disappear or that it will receive no appropriation from the legislature. If plaintiff's contention is valid then it would apply to any assessment or any tax levied by the Commonwealth, even if provision were made for payment of refunds from the general fund. We think there is no real basis for a fear that should plaintiff at some future time obtain judgment for the amount of an assessment no money will be available to meet such judgment.

We are of opinion that plaintiff's action is premature in that neither the validity of the assessment in general, nor the correctness of the particular amount assessed has been finally determined by the commission. Plaintiff has not availed itself of its remedies before the commission even though such remedies are expressly provided by the same act under which the assessment was levied. Plaintiff does not show any ground for equitable relief in that the time for payment has been automatically suspended by its action in filing objections with the commission. Furthermore, plaintiff faces no harm or even penalty for failure to obey an adverse ruling by the commission on its objections. At most plaintiff will be subject to an action at law brought by the Department of Justice to collect the amount lawfully assessed; and, finally, if plaintiff chooses to pay, it has two years in which to sue the Commonwealth for a refund and a definite fund out of which any judgment it secures will be paid.

And now, March 15, 1939, it is ordered, adjudged, and decreed that the answer of defendants raising preliminary objections is sustained and plaintiff's bill in equity is dismissed at its cost.