MARQUETTE CEMENT MFG. CO. v. FEDERAL TRADE COMMISSION.

No. 8371.

Circuit Court of Appeals, Seventh Circuit.

Jan. 29, 1945.

Rehearing Denied March 27, 1945.

Edward A. Zimmerman, Harold W. Norman, and William R. Engelhardt, all of Chicago, Ill., and Roscoe Pound of Cambridge, Mass., for petitioner.

Walter B. Wooden, Asst. Chief Counsel, of Washington, D. C., for respondent.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

MAJOR, Circuit Judge.

There are pending in this court numerous petitions to review a cease and desist order entered by the Federal Trade Commission on July 17, 1943. On July 31, 1944, this court entered two orders denying certain applications to adduce additional evidence, without prejudice to the right of renewal upon hearing on the merits. Included in such applications was that of the Marquette Cement Manufacturing Company (instant petitioner) to adduce additional evidence in support of its motion to recuse the members of the Commission from passing on the issues presented by the Commission's complaint.

On November 14, 1944, petitioner filed its motion requesting this court to reconsider and reverse its orders of July 31, 1944, insofar as they relate to petitioner's right to adduce additional evidence in support of its contention that the Commission was disqualified. We have also been urged to decide in advance of a hearing upon the merits petitioner's contention that the Commission was disqualified. Obvi-

ously, if petitioner's contention in this respect is sustained, it would follow that the Commission's cease and desist order would have to be vacated and set aside. We have concluded that it would be appropriate to hear and decide in advance this issue thus raised. We have, therefore, heard oral argument on this issue and have been favored with extensive briefs pertaining thereto.

Petitioner and seventy-four other producers of Portland cement were charged, under § 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45(b), by a complaint filed July 2, 1937, with engaging in unfair competition by entering into a combination among themselves through an agreement to employ and the actual employment of "what is known as a multiple basing point system of pricing." The substance of the charge is that by the employment of this system such cement producers violated the anti-trust laws, particularly the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and Clayton Act, 38 Stat. 730. Such charges were denied, and upon the issue thus formed hearings were had which extended from December 1, 1937, to November 29, 1940, in which Marquette actively participated. On December 16, 1941, more than a year after the taking of testimony had been concluded, Marquette in its brief asserted for the first time that the Commission had prejudged the issues, and in support of such assertion set forth excerpts from certain publications of the Commission published both before and after the commencement of the proceedings. Not until May of 1942 and at the time of oral argument before the Commission did Marquette formally charge the Commission with being disqualified.

At that time, it filed what it termed a petition, motion and supporting affidavit by Marquette's counsel "to recuse the Federal Trade Commission from passing upon the issues." There were also submitted, in support of Marquette's petition, twenty-three exhibits, which in the main consisted of reports made by the Commission either to the Congress or to the President, as is authorized by § 6 of the Trade Commission Act, 15 U.S.C.A. § 46. These reports covered a period from 1927 to 1941, and had to do largely with the Commission's theory as to the result produced by use of the basing point price system and variations of such system, such as the multiple

basing point price system. They treated of the use of such price systems by industry generally, and particularly the steel industry. They also disclose that the Commission regarded the cement industry in the same category, as far as price fixing was concerned, as steel and other industries.

The Commission denied Marquette's motion to recuse and also denied leave to introduce Marquette's exhibits offered in support thereof. In making up the record, however, which has been certified to this court, the exhibits have been included and are before us. In view of this situation, we think there is no need of a formal ruling upon the Commission's refusal to admit such exhibits in evidence. Furthermore, we think that a detailed statement of their contents is unnecessary. The most that can be said of them is that the Commission from numerous investigations had formed an opinion that the basing point price system, as well as the multiple system, was illegal. We think it is also fairly inferable that the Commission had formulated such an opinion concerning the cement industry. We may assume, and for the purpose of the question before us do assume, that such was the case.

The basis of the charge that the Commission was disqualified from hearing, trying and passing upon the issues involved was that it "is not a tribunal free from bias and prejudice," and that prior to the filing of the complaint and subsequent thereto it had expressed a "prejudgment of the issues in this cause and was prejudiced and biased against the Portland cement industry generally," and that such industry, and particularly Marquette, could not receive a fair and impartial hearing. Petitioner, in its brief filed in this court, elaborates upon its charge that the Commission was disqualified and states:

"By that we mean that by the rules of fair play, which men of honor have followed since the dawn of civilization, * * * it has consistently been held to be fundamental and indispensable that triers of the facts shall be unbiased and non-partisan."

The Commission, in support of its order refusing to disqualify itself, relies upon three propositions: (1) That petitioner's motion to disqualify, long after the hearings had been completed and after briefs had been submitted, was not made in apt time; (2) the facts on which petitioner

relies do not constitute disqualification; and (3) the law does not permit disqualification on the basis of the facts relied on by petitioner.

As hereinafter decided, we think the Commission could not be disqualified in the manner attempted, but assuming it could be, we are of the view that the attempt to disqualify was made too late. If we were disposed to rest our decision merely upon this basis, we would set forth the substance of the affidavit made by counsel for Marquette and attached to its petition to recuse the Commission, which is relied upon as showing the reason or excuse for the delay. Inasmuch, however, as we shall consider the merits of the charge, we think it is sufficient to observe that we have read counsel's affidavit and are not impressed with the reasons assigned for the tardiness in making the motion to recuse.

On the merits, we know of no case which has expressly passed upon the question as to whether an administrative agency created by Congress can be required to disqualify itself because of bias, prejudice or prejudgment. The cases with closest analogy are those concerned with the disqualification of a judge. In sharp contrast, however, is the fact that Congress in creating the Federal Trade Commission made no provision for the disqualification of its members, while it has made such provision for the disqualification of a judge. Also, it seems plain that if the statutory reasons for disqualifying a judge be applied to the Federal Trade Commission, the showing in the instant case was insufficient for the reason that neither the motion nor affidavit contained an allegation that the prejudice or bias was "personal."

§ 21 of the Judicial Code, 28 U.S. C.A. § 25, provides for the disqualification of a judge upon the filing of an affidavit that such judge "has a personal bias or prejudice either against him (affiant) or in favor of an opposite party to the suit." It also provides that the affidavit shall state the reasons for the belief that such bias or prejudice exists, and that the affidavit must be filed ten days before the beginning of the term of court or good cause shown for failure to file within such time. It is also required that the affidavit be accompanied by a certificate of a counsel of record that such affidavit and application are made in good faith. That this section of the statute must be literally and strictly observed in order to disqualify a judge is not open to question. Cf. Ex Parte American Steel Barrel Co., 230 U.S. 35, 43, 33 S.Ct. 1007, 57 L.Ed. 1379. It has been held that the bias or prejudice alleged must be "personal," and that a mere prejudgment of the case is not sufficient. Henry v. Speer, 5 Cir., 201 F. 869, 872; Price v. Johnston, 9 Cir., 125 F.2d 806, 812. That the affidavit of personal bias and prejudice shall not be filed unless accompanied by a "certificate of counsel." Beland v. United States, 5 Cir., 117 F.2d 958, 960; Mitchell v. United States, 10 Cir., 126 F.2d 550, 552. That the affidavit of disqualification must be filed in apt time. Scott v. Beams, 10 Cir., 122 F.2d 777, 789; Refior v. Lansing Drop Forge Co., 6 Cir., 124 F.2d 440, 445. In Fish v. East, 10 Cir., 114 F.2d 177, it was sought to disqualify a referee in bankruptcy, under § 21, for bias and prejudice. The court held the disqualification provision inapplicable to a referee, and in so doing stated, page 200:

"There appears to be no rules either of said district, or in the rules of civil procedure, or in the general orders, relating to the removal or disqualification of referees. A party aggrieved by an order of the referee may file a petition for review."

These cases construing § 21 have been cited for the purpose of showing the strict construction which courts have placed upon the right of a party litigant to disqualify a judge. In this connection, it is pertinent to observe that the cases are not concerned with what a judge might or should do when confronted with a charge of bias or prejudice but what he must do under the statutory provision, or, in other words, the precise steps which a litigant must take before he is entitled as a matter of right to disqualify. Likewise, in the instant situation, from a strictly legal standpoint, we are not concerned, we have no right to be concerned, with what the Commission could or might do when faced with a similar charge. The query for decision is whether the Commission was required under the law to disqualify itself, or, conversely, whether Marquette had a legal right to effect such disqualification.

We find no basis in the law for an affirmative answer to this question. Congress is the creator of all inferior federal courts, as well as administrative agen-

cies. The jurisdiction and authority of each is confined solely to that which Congress bestows. There are no limitations upon this congressional power other than the Constitution. Congress has conferred upon a litigant the right to challenge the qualification of a judge, provided such litigant complies with the statutory mandate. On the other hand, no such right has been conferred upon a litigant before the Federal Trade Commission. In our view, the right to disqualify a trier of facts created by Congress, whether it be a judge or an administrative agency, is a matter for Congress. Such right may be conferred or withheld as Congress deems advisable.

The view which we have just stated finds support in Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749, 50 A.L.R. 1243. In that case, the law of the state of Ohio conferred upon village mayors the right to try those charged with certain misdemeanors. Their compensation was derived in part from fines collected in such cases. The court held that the judgment of a court, the judge of which has a direct, personal and substantial pecuniary interest in reaching a conclusion against him, deprives such defendant of due process of law in violation of the Fourteenth Amendment. The court, however, on page 523 of 273 U.S., at page 441 of 47 S.Ct. stated:

"All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion."

Closely akin to the legislative discretion theory is one sometimes referred to as "the rule of necessity." This rule is applicable upon attempts to disqualify both courts and administrative agencies. In Montana Power Co. v. Public Service Commission, D.C., 12 F.Supp. 946, it was sought to disqualify a member of a state administrative agency because such member had prejudged the case prior to hearing. The court cites numerous cases to the effect that a member of an administrative agency is not subject to disqualification in the absence of a statutory provision conferring such right. The court applied "the rule of necessity", at page 949, quoting from R.C.L.:

"The true rule unquestionably is that wherever it becomes necessary for a judge to sit, even where he has an interest, if no provision is made for calling another in, or where no one else can take his place, it is his duty to hear and decide, however disagreeable it may be."

In Brinkley v. Hassig, 10 Cir., 83 F.2d 351, the court also applied the rule to a state administrative agency, and in so doing stated, at page 357:

"From the very necessity of the case has grown the rule that disqualification will not be permitted to destroy the only tribunal with power on the premises."

In the recent case of Loughran v. Federal Trade Commission, 8 Cir., 143 F.2d 431, one of the points relied upon was that the Commissioners had disqualified themselves from sitting as an impartial, fact finding body. While the court appears to have disposed of the contention largely on the premise that the attack upon the commission was not timely, it also pointed out at page 433:

"* * * the Federal Trade Commission Act establishes the composition of the Commission and contains no provision for change of venue. The 'stern rule of necessity' required the Commission to act in the proceeding." (Citing cases.)

In United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429, it was sought to disqualify the Secretary of Agriculture on the ground that he had prejudged the issue for decision. After pointing out that none other than the Secretary had legal authority to make the order in controversy, the court stated at page 421 of 313 U.S., at page 1004 of 61 S.Ct.:

"Plainly enough, when it was thus suggested that he create a situation in which no order could be made, the Secretary was offered no escape from his duty even had he preferred to consult the comforts of personal convenience."

In its endeavor to escape this "rule of necessity," Marquette contends that the Department of Justice has concurrent power or jurisdiction with the Trade Commission to enforce or secure the restraint of the Sherman and Clayton Acts. It is true that § 4, 15 U.S.C.A. § 4, of the former and § 15, 15 U.S.C.A. § 25, of the latter authorize district attorneys of the United States, under the direction of the Attorney General, to institute equitable proceedings to prevent and restrain violation of such Acts. It does not follow, however, that the Department of Justice or a court, when

such proceeding is instituted, has concurrent power or jurisdiction with the Federal Trade Commission. True, the issues may be similar, but the fact remains that the Federal Trade Commission is the only tribunal clothed with the power and charged with the responsibility of protecting the public against unfair methods of competition and price discrimination. It is also certain that proceedings instituted by it could not be removed to any other tribunal for hearing. If the Commission be disqualified, it undoubtedly follows that the complaint in the instant case would remain untried. Under these circumstances, as the authorities show, "the rule of necessity" requires that the Commission be permitted to hear the case.

As we understand, the contention is not advanced by Marquette that the failure of the Commission to disqualify itself constitutes a lack of due process. Nevertheless, it is pertinent to observe that the order of the Commission does not become effective until an opportunity has been afforded for review. Under such circumstances, it has frequently been held that the order of an administrative agency is not a deprivation of due process. Porter v. Investors' Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226; United States v. Illinois Central R. Co., 291 U.S. 457, 463, 54 S.Ct. 471, 78 L.Ed. 909; Nickey v. Mississippi, 292 U.S. 393, 396, 54 S.Ct. 743, 78 L.Ed. 1323; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 303, 57 S.Ct. 724, 81 L.Ed. 1093.

In conclusion, we are not unsympathetic to the criticism directed at the Commission by Marquette, a criticism much aimed at all administrative agencies, to the effect that their multiple functions as prosecutor, judge and jury constitute an abridgement of the cherished right to a fair and impartial hearing. On the other hand, as already pointed out, they are the creatures of Congress and it is not within the province of courts either to emasculate or enlarge the powers which it has conferred. Any appeal for relief should be made to Congress rather than to the courts.

For the reasons stated, it is our conclusion that the Commission acted within its authority in denying Marquette's motion to recuse its members from trying and deciding the issues involved. It follows that the orders entered by this court on July 31, 1944, insofar as they pertain to such motion, were properly entered. The instant motion to vacate and set aside is, therefore, denied.