Burt ST. GERMAINE and Querner Truck Lines, Inc., Appellants,

v.

ALAMO MOTOR LINES, Sunset Motor Lines, Strickland Transportation Company, Inc., and Yellow Transit Freight Lines, Inc., Appellees.

No. 16705.

United States Court of Appeals Fifth Circuit.

Jan. 21, 1958.

Maynard F. Robinson, San Antonio, Tex., for appellants.

Ralph M. Jones, Kansas City, Mo., Ralph W. Currie, O. B. Freeman, Jr., Sam P. Kohen, Dallas, Tex., Currie, Kohen & Freeman, Dallas, Tex., for appellee Strickland Transp. Co., Inc.

Phillip Robinson, Herbert L. Smith, Austin, Tex., Smith, Robinson & Starnes, Austin, Tex., of counsel, for appellees Texas-Arizona Motor Freight, Inc. and Sunset Motor Lines.

Before CAMERON, JONES and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

The question upon which this appeal will be decided is whether the District Court had jurisdiction, in an action brought under the Interstate Commerce Act,[1] to enter a declaratory judgment

1. Appellants base their asserted rights upon § 303(b), § 316(a), and § 317(a), (b), (c), and (d) of Title 49 United States Code Annotated.

defining the rights and relationships of the parties without the prior exhaustion of the administrative remedies provided by the Act.[2] Claiming to be exempt carriers within the meaning of the Act,[3] appellants-plaintiffs charged in their complaint that they were engaged in transporting from various points in Texas to other states such commodities as wool, including alpaca hair and Angora goat hair, with the right to charge such rates as they desired because, being so exempt, they were not subject to the terms of the Act. They averred further that the appellees-defendants were also engaged in the interstate transportation of the same commodities, but that they were common carriers subject to the terms of the Act, and that each of them had filed with the Commission and had established rates for such transportation between designated points; and that, having so done, appellees-defendants were bound to observe said rates but had not done so, disregarding them and charging less than the published rates, to the great damage of appellants. And they prayed that the Court declare that such acts of appellees were illegal and actionable under the Interstate Commerce Act.[4]

Appellees moved to dismiss the action on the ground that the complaint "fails to state a claim * * * upon which relief can be granted * * * [and] because it is not alleged in the complaint that plaintiffs have applied to the Interstate Commerce Commission for relief or that the Interstate Commerce Commission has refused to consider or to act in respect to the matters set forth in the complaint."[5]

■ The Court below granted the motions to dismiss and, under the authorities, we think this action was correct. Congress has committed to the Interstate Commerce Commission the duty to administer, execute and enforce the Act,[6] and has provided [7] procedure "in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission * * *" under this procedure, any party in interest may appear as a matter of right in any action involving the validity of an order of the Commission.

■ The Supreme Court has held, in a long series of decisions, that administrative provisions established by Congress must be followed, and the aid of the courts in proceedings such as this one cannot be invoked until the exhaustion of administrative remedies. A brief review of a few of the cases will suffice.

Myers v. Bethlehem, Shipbuilding Corp.[8] involved two suits in equity to enjoin the enforcement of the National Labor Relations Act, 29 U.S.C.A. § 151

2. See footnote 6 infra.

3. 49 U.S.C.A. § 303(b) (6) lists among the "Vehicles excepted from operation of law", "motor vehicles used in carrying * * * agricultural commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation; * * *."

4. The complaint prayed also for temporary and permanent injunctions restraining appellees from charging less than their published rates, but the injunctive features are abandoned on appeal, appellant's argument being confined exclusively to rights claimed by them under the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202.

5. The record contains a transcript of a statement of appellants' attorney to the Court below that he had filed substantially simultaneous proceedings before the Interstate Commerce Commission.

6. See, e. g., 49 U.S.C.A. § 304, making it the duty of the Commission to regulate common and contract carriers, to make the necessary investigations for the classification of motor carriers, to investigate complaints and, in general, "(6) to administer, execute, and enforce all provisions of this chapter, to make all necessary orders in connection therewith, and to prescribe rules, regulations, and procedure for such administration * * *."

7. 28 U.S.C.A. Chapter 157, § 2321 et seq.

8. 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, reversing decision of the Circuit Court of Appeals for the first circuit reported in 88 F.2d 154 et seq.

et seq. in which the District Court entered preliminary injunctions based upon facts set forth in the complaints, its judgments being affirmed by the Circuit Court of Appeals. The chief contention of Bethlehem was that the acts complained of did not involve interstate or foreign commerce, and that irreparable injury would result if the National Labor Relations Board were permitted to engage in protracted hearings on this purely legal question. The Supreme Court rejected that argument, using this language (303 U.S. at pages 50–51, 58 S.Ct. at page 463):

> "The contention is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. That rule has been repeatedly acted on in cases where, as here, the contention is made that the administrative body lacked power over the subject matter.

> "Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Law suits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact." [9]

In Waterman S. S. Corporation v. Land, a District Court had dismissed for want of jurisdiction Waterman's complaint for declaratory judgment that the Renegotiation Act [10] did not apply to contracts made between it and the British Ministry of War Transport. The Court of Appeals,[11] holding that the Renegotiation Act listed the departments of the United States Government whose contracts were subject to renegotiation and that said Act had no application at all to contracts made with a foreign government, set aside the dismissal.

The Supreme Court reversed [12] approving the action of the District Court in dismissing Waterman's complaint: "Respondent urges several grounds for not applying the rule of the Myers case here. * * * Even if one or all of these things might possibily occur in the future, that possibility does not affect the application of the rule requiring exhaustion of administrative remedies. The District Court had no power to determine in this proceeding and at this time issues that might arise because of these future contingencies."

In Arkansas Power & Light Co. v. Federal Power Commission,[13] the District Court rejected the prayer of the Power Company for declaratory judgment, joined in by the crossclaim of the Arkansas Department of Public Utilities, on the ground that the Court was with-

---

9. Among the cases cited in support of that holding is United States v. Illinois Central R. Co., 1934, 291 U.S. 457, 463, 54 S.Ct. 471, 78 L.Ed. 909, a case involving an order of the Interstate Commerce Commission in which the court held that "The various steps to be taken constitute parts of the administrative process which must be completed before the extraordinary powers of a court of equity may be invoked."

10. 50 U.S.C.A.Appendix, § 1191.

11. United States Court of Appeals, District of Columbia, 1945, 80 U.S.App.D.C. 167, 151 F.2d 292, 294–295. The gist of its holding is found in this paragraph: "Certainly the power of a federal court, in a case of actual controversy involving no question of administrative discretion, to enter judgment declaratory of the rights of the parties is fundamental where no exclusive remedy is provided by statute * * *. And that is certainly true in this case, for here, as the result of the District Court's disclaimer of jurisdiction, Waterman would be subjected to an expensive inquisitorial investigation. * * * in advance of a decision on the primary question, whether it is liable at all. To grant such a proposition would be contrary to the principles of expeditious justice."

12. Macauley v. Waterman S.S. Corp., 327 U.S. 540, 545, 66 S.Ct. 712, 714, 90 L. Ed. 839.

13. D.C.D.C., 1945, 60 F.Supp. 907.

out jurisdiction to grant any equitable relief until the administrative remedies provided by the Federal Power Act[14] had been exhausted. The Court of Appeals[15] set aside the order of the District Court dismissing the complaint and instructed it to determine the controversy, feeling that the case presented was typically one for a declaratory judgment to protect the Power Company from "the dangerous possibility of making an erroneous interpretation" whether the federal or the state law applied to its bookkeeping methods. The Supreme Court[16] reversed the judgment of the Court of Appeals "on the ground that respondent has failed to exhaust its administrative remedies," citing the Myers and Waterman cases as authority.[17]

And this Court has been punctilious in its adherence to the rule that judicial proceedings will not be permitted to intrude upon prescribed administrative action, which, under our system, is accorded universal preference.[18]

Appellants argue earnestly that, having abandoned their efforts to obtain an injunction, they are entitled to the judgment of the courts under the Declaratory Judgments Act which they contend is much broader in its scope and coverage than the right to injunctive or other relief.[19]

The authorities do not sustain this position. In Bradley v. National Labor Relations Board, supra, 84 F.2d at page 100, we rejected the contention: "The new power to make a declaratory decree does not authorize a court of equity by declaration to stop or interfere with administrative proceedings at a point where it would not, under settled principles, have interfered with or stopped them under its power to enjoin;" and the Supreme Court[20] reviewed the cases defining the nature and scope of the Federal Declaratory Judgments Act and its application to judicial intervention in the administrative process and announced a like conclusion. These words from its opinion fit the present case: "It would not be tolerable, for example, that declaratory judgments establish that an enterprise is not in interstate commerce in order to forestall proceedings by the National Labor Relations Board, the Interstate Commerce Commission or many agencies that are authorized to try and decide such an issue in the first instance * * * Responsibility for effective functioning of the administrative process cannot be transferred from the bodies in which Congress has placed it to the courts."

It is clear, therefore, that appellants, having invoked the jurisdiction of the Court below solely under the Interstate

14. 16 U.S.C.A. § 825*l* (b).

15. For the District of Columbia, 1946, 81 U.S.App.D.C. 178, 156 F.2d 821, 832–833.

16. In a per curiam opinion, 1947, 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261.

17. These cases were further approved and their holdings amplified in the exhaustive opinion of the Supreme Court in Aircraft and Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796. And see also Hecht Co. v. Bowles, 1944, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

18. Bradley Lumber Co. of Arkansas v. N.L.R.B., 5 Cir., 1936, 84 F.2d 97; Cook v. Davis, 5 Cir., 1949, 178 F.2d 595, certiorari denied 340 U.S. 811, 71 S.Ct. 38, 95 L.Ed. 596; Bates v. Batte, 5 Cir., 1951, 187 F.2d 142; Peay v. Cox, 5 Cir., 1951, 190 F.2d 123, certiorari denied 342 U.S. 896, 72 S.Ct. 230, 96 L. Ed. 671. And cf. Rogers v. B & B Vending Co., 5 Cir., 1957, 250 F.2d 120.

19. The sole "assignment of error" and definition of the "points raised by the appeal" and the major portion of their argument are devoted to this thesis which is thus epitomized by them: "The legal point relied on by Appellants is: The Court erred in dismissing the suit for lack of jurisdiction because the declaratory judgment action is sui generis, neither legal nor equitable, and is available to Plaintiffs whether or not further (other) relief is or could be sought. * * *"

20. Public Service Commission of Utah v. Wycoff Co., Inc., 1952, 344 U.S. 237, 246, 73 S.Ct. 236, 97 L.Ed. 291.

Commerce Act, must follow the procedures contained in that Act. They cannot sustain an action aimed at obtaining a declaration of their rights under that Act until they have at least exhausted its administrative provisions. We are of the opinion, therefore, that the Court below properly dismissed their action for the reasons stated and it is not necessary to discuss the other questions raised by appellees. The judgment of the District Court is

Affirmed.