## MAY v. MAURER.

### No. 4082.

United States Court of Appeals
Tenth Circuit.

Nov. 1, 1950.

Rehearing Denied Nov. 25, 1950.

476

Melvin D. Rueckhaus, Albuquerque, N. M. (Rueckhaus & Watkins, Albuquerque, N. M., on the brief), for appellant.

William A. Moran, Spl. Lit. Atty., OHE, Washington, D. C., (Ed Dupree, Genl. Cnsl., OHE, Leon J. Libeu, Asst. Gen. Counsel, OHE, Washington, D. C., Everett M. Grantham, U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

May brought this action against Maurer, seeking an injunction and a declaratory judgment. Maurer is the Area Director of the Office of the Housing Expediter, in a Defense-Rental Area which includes the city of Albuquerque, New Mexico. In her complaint May alleged these facts: May is the owner of an apartment house located at 400 North 11th Street, Albuquerque, New Mexico. Maurice R. Spear and Irma R. Spear offered to lease such premises for use as a hospital or sanitarium. May accepted the offer on condition that it would not subject the premises to rent control. On July 17, 1948, May entered into a lease with the Spears to rent such premises for commercial purposes, for a period of five years, with the privilege of renewal for an additional five years. Such lease was examined by Maurer and pronounced not to bring the leased premises within rent control. On July 27, 1949, the Spears, with May's consent, sublet the premises to Alpha L. Gross. On January 3, 1950, May was served with a notice upon Housing Expediter Form No. D-402, which ordered her to appear before the Housing Expediter on January 6, 1950, to answer the charge that she had collected, or attempted to collect, rents in excess of the maximum rent for the leased "accommodations." May appeared through her attorneys and Maurer informed them it was then mandatory to register the premises and have a rent ceiling fixed. May, through her attorneys, tendered a rent registration, which Maurer refused on the ground that it stated the premises were not housing accommodations and that Maurer had information that people were housed in the leased premises. Such premises were then being used as a hospital or sanitarium. On January 27, 1950, Maurer issued a notice to May on Form D-18, which stated "that under the provisions of § 5-C 1 of the Housing Regulations * * * he was reducing the allowable rent to be charged from $450 per month to $275 per month, as of August, 1948," and that May had seven days to show cause why an order should not be issued reducing such rent. May appeared through her attorney at the office of Maurer, but Maurer refused to hear either argu-

ment or facts respecting his jurisdiction over such leased premises and stated that if May's attorney presented any facts or arguments as to the amount of the rent, he would require him to waive the question of jurisdiction and he would issue an order reducing the rent from $450 to $275 per month, as of August, 1948, such order to be entered as of February 3, 1950.

May further alleged that the administrative regulations did not provide for a stay pending a review of the order entered by Maurer.

May prayed for a judicial determination as to whether the premises were subject to rent control by the Rent Director, for a temporary restraining order restraining Maurer from issuing any order fixing the rent ceiling until a final determination of the action by the District Court, and for a permanent injunction restraining Maurer or his successors in office from issuing any order subjecting the leased premises to rent control.

Maurer filed a motion to dismiss on the grounds: (1) That the Housing Expediter was an indispensable party, and (2) That May had not exhausted her administrative remedies.

The trial court sustained the motion on both grounds and dismissed the action.

Section 202(b) of Title II of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1892(b) defines housing accommodations as follows: "(b) The term 'housing accommodations' means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, rooming- or boarding-house accommodations, and other properties used for living or dwelling purposes) * * *."

Section 202(c) of Title II of such Act, as amended, 50 U.S.C.A.Appendix, § 1892(c), defines controlled housing accommodations as follows:

"(c) The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include * * *." It then sets forth certain exceptions, including two classes of hotels, and

"(2) any motor court, or any part thereof; any trailer, or trailer space, used exclusively for transient occupancy, or any part thereof; or any tourist home serving transient guests exclusively, or any part thereof; * * *."

Section 204(a) of Title II of such Act, as amended, 50 U.S.C.A.Appendix, § 1894(a), in part reads: "Sec. 204. (a) The Housing Expediter shall administer the powers, functions, and duties under this title; and for the purpose of exercising such powers, functions, and duties, and the powers, functions, and duties granted to or imposed upon the Housing Expediter by title I of this Act, * * * the Office of Housing Expediter is hereby extended until June 30, 1950."

Section 204(d) of Title II of such Act, as amended, 50 U.S.C.A.Appendix, § 1894 (d), provides: "Sec. 204. (d) The Housing Expediter is authorized to issue such regulations and orders, consistent with the provisions of this title, as he may deem necessary to carry out the provisions of this section and section 202(c)."

The rent regulations promulgated under the Housing and Rent Act of 1947, as amended, Federal Register, September 17, 1949, in part provide:

"§ 825.1 Definitions and scope of §§ 825.1 to 825.12. 'Act' means the Housing and Rent Act of 1947, as amended.

"'Expediter' means the Housing Expediter or the Rent Director or such other person or persons as the Expediter may appoint or designate to carry out any of the duties delegated to him by the act.

"'Rent Director' means the person designated by the Expediter as director of the defense-rental area or such person or persons as may be designated to carry out any of the duties delegated to the Rent Director by the Expediter."

■ An action may not be maintained against a subordinate official without joining his superior as a party, if the relief sought will require such superior to take action, either by exercising directly a power lodged in him, or by having a subor-

dinate exercise it for him. In such cases the superior official is an indispensable party.[1]

■ Where a subordinate public official "invades a private right either by exceeding his authority or by carrying out a mandate of his superior," and a decree in an action brought against such subordinate official "will effectively grant the relief" sought "by expending itself on the subordinate official,"[2] and will not "interfere with the public administration,"[3] the superior of such subordinate is not an indispensable party.

■ Here, in so far as May sought injunctive relief against the issuing or enforcement of an order by Maurer reducing the rent, an injunctive order would expend itself on Maurer, the subordinate official, and an action for that relief could be maintained without joining the Housing Expediter as a party defendant; however, that relief was only incidental to the main relief sought, which was a decree adjudicating that the leased premises were not subject to rent control and permanently enjoining the issuance of orders subjecting such premises to rent control. A decree could not effectively grant such principal relief unless it bound the Housing Expediter, and such a decree, if binding on the Housing Expediter, would interfere with the public administration of rent control. An action for such principal relief could not be maintained without joining the Housing Expediter as a party.

■ Neither do we think May could maintain an action for such incidental relief without first exhausting her administrative remedies. Under §§ 840.102-840.112 of Rent Procedural Regulation 2, as amended, (14 F.R. 5271) May was entitled to petition the Area Rent Director for relief from the order of Maurer, as Rent Director, and under §§ 840.113-840.129 of such regulation, in the event the Area Rent Director entered an order denying her such relief, to have such order reviewed on appeal by the Housing Expediter.

■ We do not think it can be said that the ruling of Maurer that the leased premises, when used as a sanitarium, constituted a housing accommodation, was arbitrary, capricious or clearly unauthorized.

■ Nowhere in the exclusion provisions of § 202(c), supra, is any reference made to sanitariums or hospitals. Sanitariums provide room and board, and services incidental thereto, not infrequently for substantial periods, either for the purpose of medical treatment or for convalescence from sickness. In that way, at least they are used for living purposes. They are not substantially different from motor courts, trailers, trailer space or tourist homes, which are exempted only where they serve transient guests exclusively. Therefore, the contention that the leased premises were not subject to rent control presented a substantial question. For that reason the instant case is distinguishable from Koepke v. Fontecchio, 9 Cir., 177 F.2d 125, and Wettre v. Hague, 1 Cir., 168 F.2d 825, 826, where the action sought to be enjoined was clearly an unlawful invasion of a private right;[4] and it falls within the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.[5]

Affirmed.

1. Williams v. Fanning, 332 U.S. 490, 493, 68 S.Ct. 188, 92 L.Ed. 95; Warner Valley Stock Co. v. Smith, 165 U.S. 28, 34, 35, 17 S.Ct. 225, 41 L.Ed. 621; Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068; Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411.

2. State of Colorado v. Toll, 268 U.S. 228, 230, 45 S.Ct. 505, 69 L.Ed. 927; Williams v. Fanning, 332 U.S. 490, 493, 494, 68 S. Ct. 188, 189, 92 L.Ed. 95; Philadelphia Co. v. Stimson, 223 U.S. 605, 619, 620, 32 S.Ct. 340, 56 L.Ed. 570.

3. Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209.

4. See also, Order of Conductors v. Pitney, 326 U.S. 561, 566, 66 S.Ct. 322, 90 L. Ed. 318.

5. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50, 51, 58 S.Ct. 459, 82 L. Ed. 638; Henderson v. Kimmel, D.C. Kan., 47 F.Supp. 635, 645; Gates v. Woods, 4 Cir., 169 F.2d 440, 442; Babcock v. Koepke, 9 Cir., 175 F.2d 923.