**SMITH v. UNITED STATES.**

No. 4641.

United States Court of Appeals
First Circuit.

Oct. 29, 1952.

Rehearing Denied Nov. 18, 1952.

378

Morris H. Kramer, Boston, Mass., for appellant.

Cecil H. Lichliter, Sp. Litigation Atty., Office of Rent Stabilization, Washington, D. C. (Ed Dupree, General Counsel, A. M. Edwards, Jr., Asst. Gen. Counsel, Nathan Siegel, Sol., and Isadore A. Honig, Sp. Litigation Atty., all of Office of Rent Stabilization, Washington, D. C., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Acting under § 206(b) of the Housing and Rent Act of 1947, as amended, 63 Stat. 27, 50 U.S.C.A.Appendix, § 1896(b), the court below entered judgment on January 22, 1952, ordering restitution to a tenant, John Shanks, in the sum of $517.70, as a refund of rent collected by defendant landlord in excess of the maximum legal rent during the period December 1, 1948, to March 29, 1951, and permanently enjoining defendant from further violations of the Act and the regulations thereunder. Judgment was entered pursuant to motion for summary judgment filed by the United States as plaintiff in the action. The landlord has taken this appeal.

It was alleged in the complaint that the maximum rent for the housing accommodation in question, described as Apartment No. 2, 198 Billings Road, Quincy, Massachusetts, was established under the Emergency Price Control Act of 1942, 50 U.S. C.A.Appendix, § 901 et seq., and the applicable regulations issued thereunder, and under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq., and the regulations issued pursuant thereto; that the defendant demanded and received for the use and occupancy of the apartment for the whole period December 1, 1948, to March 29, 1951, the sum of $50 per month, whereas the maximum legal rent was $30 per month from December 1, 1948, to April 13, 1949, and $31.80 per month from April 13, 1949, to March 29, 1951, the total overcharge, for which restitution to the tenant was demanded, being calculated in the sum of $517.70.

In his answer to the complaint, the defendant denied "that the maximum rent of the premises was established under the Emergency Price Control Act of 1942"; and alleged "that said premises at that time were occupied by the owner of the dwelling house and were not subject under the Housing and Rent Act of 1947, as amended"; and that the schedule in the complaint setting forth the maximum legal rent per month was erroneous and misleading. Further answering, the defendant said "that on or about the first day of December, 1948, he rented the premises to, one John Shanks, as an individual, for living quarters, and to the said John Shanks for and in behalf of a distinct entity, a partnership known and operated under the firm name and style of South Shore Express, which said partnership operated under franchises granted by the Interstate Commerce Commission; that said business was transacted and continuously conducted from and on said premises and that the telephone number was plainly marked on two trucks owned by said South Shore Express. And the defendant further says that said arrangement is not in violation of the Rent Act or any part thereof for the reason that the business so conducted is strictly commercial in nature and does not come within the express or implied terms and provisions of the Act."

In response to a request for admissions filed by plaintiff under Rule 36(a), Fed. Rules Civ.Proc., 28 U.S.C.A., the landlord

admitted that he had filed a registration statement in the Eastern Massachusetts Area Rent Office in November, 1950, "setting forth that the maximum rent for the controlled housing accommodations, Suite 2, 198 Billings Road, Quincy, Massachusetts, was $50.00 per month and that the first rental subsequent to March 1, 1942 was December 1, 1948"; but he explained "that said registration contemplated and included a disconnected commercial use which does not appear upon the registration because no provision was made on said form by the Area Rent Office to include a commercial rent." In response to a request for admission that during the period in question he had demanded and received as rent a sum in excess of the maximum legal rent as set forth in the said schedule, defendant denied the allegation, and alleged "that no part of the rent received was in excess of the maximum legal rent for said apartment for the reason that said rentals came from two distinct sources, one being for the occupancy by John Shanks for dwelling purposes, and the other as rental for the use and occupation of the said premises by the South Shore Express, a commercial enterprise operating under Interstate Commerce Commission franchises and that on said December 1, 1948, said South Shore Express was a partnership composed of John Shanks and another."

At this point we pause to consider what would have been the maximum legal rent if it were open to the defendant to prove in the district court his aforesaid allegations, that the premises were occupied by the owner on March 1, 1942 (the freeze date established by the rent regulation issued under the Emergency Price Control Act of 1942); and that the premises were first rented on December 1, 1948, said rental being in part to John Shanks for dwelling purposes and in part to a trucking partnership for commercial purposes.

If such were assumed to be the facts, then no maximum rent for the premises was established under the Emergency Price Control Act of 1942. That Act terminated on June 30, 1947. On the next day the Housing and Rent Act of 1947 went into effect, 61 Stat. 193, § 202(c) (3) of which

excluded from the definition of "controlled housing accommodations" dwelling units "which at no time during the period February 1, 1945, to January 31, 1947, both dates inclusive, were rented (other than to members of the immediate family of the occupant) as housing accommodations." Applying this exclusionary definition to the assumed state of facts, it would appear that the premises in question were not subject to rent control under the original terms of the Housing and Rent Act of 1947. The Housing and Rent Act of 1948, effective April 1, 1948, altered the aforesaid definition in § 202(c) (3) so as to exclude from the term "controlled housing accommodations" dwelling units "which for any successive twenty-four month period during the period February 1, 1945, to the date of enactment of the Housing and Rent Act of 1948, both dates inclusive, were not rented (other than to members of the immediate family of the landlord) as housing accommodations" 62 Stat. 94. This change did not affect the status of the premises in question, assuming the facts to be as alleged by the defendant; the premises remained free of rent control.

Section 202(c) (3) of the Housing and Rent Act of 1947 was further amended by the Housing and Rent Act of 1949, 63 Stat. 20, so as to bring the premises in question within the definition of "controlled housing accommodations" and to subject the same to rent control in case they should be rented on and after the effective date of the Housing and Rent Act of 1949, namely, April 1, 1949. Further, the 1949 Act added a new subsection (h) to § 204 of the Housing and Rent Act of 1947, reading as follows, 63 Stat. 25:

"(h) For controlled housing accommodations which were not included within the definition of 'controlled housing accommodations' as such definition read prior to the effective date of the Housing and Rent Act of 1949, the maximum rent shall be the maximum rent last in effect for such housing accommodations under Federal rent control, plus or minus applicable adjustments; or, if no maximum rent was ever in effect for such housing accom-

modations, the maximum rent shall be the rent generally prevailing in the defense-rental area for comparable controlled housing accommodations within such area, plus or minus applicable adjustments * * *."[1]

The judgment now under review directs the landlord to make restitution of overcharges during the whole period December 1, 1948, to March 29, 1951, though under defendant's allegation of facts the premises could not have become subject to rent control until April 1, 1949, the effective date of the Housing and Rent Act of 1949.

There is the further complication that the Housing and Rent Act does not authorize the imposition of controls upon commercial rentals. In Volume 6 of the Office of the Housing Expediter Manual—Sec. 1 Definitions—III, an official interpretation of the rent regulation is given, as applied to premises rented for combined business and dwelling uses. The ruling is that where the business and dwelling portions are rented to a single tenant, but are separable from each other, only the dwelling portion is subject to the regulation. But where the business and dwelling portions, though rented to a single tenant, are not separable, in accordance with the criteria contained in the interpretation, then the premises as an entirety are either subject to control or free of control, dependent upon whether the predominant use is for housing accommodations or for business purposes. However, we gather that where the premises are rented to separate tenants, part for dwelling purposes and part for commercial use, then the rental to the commercial tenant is free of control, and only the rental to the tenant for housing purposes is subject to the regulation. See a similar administrative interpretation of the rent regulation under the Emergency Price Control Act, in Pike & Fischer OPA Service 200:851 (May, 1943). If the parties themselves have not apportioned the rent as between the commercial tenant and the housing tenant, then some apportionment as between the two uses would seem to be necessary, since the landlord is entitled to charge what he pleases to a commercial tenant.

In complainant's request for admissions, defendant was asked to admit that "Orders determining the maximum rent were issued on January 8, 1951 and April 11, 1951 setting forth that on the maximum rent date the rent was $30.00 per month and $31.80 per month effective April 13, 1949." He was asked to admit further that he did not appeal to the Housing Expediter from either of these orders issued by the area rent director, and that therefore he had failed to exhaust his administrative remedy in accordance with the procedural regulations issued under the Housing and Rent Act. In his answer to the request for admissions, the defendant admitted that the said orders had been issued by the area rent director. In form, the defendant denied the allegation that he had not appealed to the Housing Expediter from the two rent orders "for the reason that, first, questions of law are involved, and, secondly, for the reason that the Office of Rent Stabilization amended and revised its previous orders and established the maximum rent at $50 per month." As to the separate allegation, that the defendant had failed to exhaust his administrative remedy, the defendant denied the allegation of this paragraph "for the reason that a question of law is involved to which the defendant ought not to be held to reply, and secondly, for the reason that the defendant contends that the Office of Rent Stabilization was acting without jurisdiction in attempting to disturb the landlord and tenant relationship which concerned the conduct of a commercial enterprise, and that there was no provision in the law for the establishment of ceilings in connection with commercial uses."

On this state of the record, the district judge concluded that there was no genuine issue as to any material fact, and that summary judgment should be entered for the plaintiff as prayed in the motion. Referring to the two orders of the area rent director issued January 8, 1951, and April 11, 1951, respectively, the district judge said in his

1. With the above-quoted statutory provision cf. § 825.4(c) of the rent regulation, 14 F.R. 5714. See also § 83 of the recodified and amended rent regulation, 16 F.R. 12883.

memorandum: "From these orders the defendant took no administrative appeal and therefore the orders must be treated in this Court as final."

■ It seems to us that there has been some confusion as to the application to these cases of the doctrine requiring exhaustion of administrative remedies. This doctrine had its origin in a discretionary rule adopted by courts of equity to the effect that a petitioner will be denied equitable relief when he has failed to pursue an available administrative remedy by which he might obtain the same relief. The landlord in the present case is not a petitioner seeking equitable relief, but rather is a defendant in an enforcement suit, in which he is charged with having exacted excessive rents in violation of an administrative regulation or order.[2] The distinction is pointed out by Judge Erskine in United States v. Fritz Properties, D.C.N.D.Cal.1950, 89 F. Supp. 772, 777, and by Judge Starr in Woods v. Laabs, D.C.W.D.Mich.1950, 92 F.Supp. 220.

■ Under the terms of the original Price Control Act of 1942, 56 Stat. 23, all courts, other than the Emergency Court of Appeals, and the Supreme Court of the United States upon certiorari thereto, were denied jurisdiction or power to consider the validity of any regulation or order establishing a maximum price or a maximum rent. The only way in which a person affected by such a regulation or order could obtain an adjudication as to its validity was by filing a formal protest with the Price Administrator within 60 days after its issuance, and, if the Administrator denied the protest, then by filing a complaint in the Emergency Court of Appeals. Upon the filing of such complaint, the Emergency Court of Appeals was given exclusive jurisdiction to set aside the regulation or order, in whole or in part, to dismiss the complaint, or to remand the proceeding. These provisions of the Act were sustained as con-

stitutional in Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. Thus if a defendant in an enforcement suit, civil or criminal, had failed to avail himself of the administrative remedy afforded by the statutory protest procedure, he was precluded from challenging the validity of the regulation or order in the enforcement proceedings. This resulted by prescription of the statute, rather than by application of the accepted rule in courts of equity that equitable relief would be denied to a petitioner who had failed to exhaust available administrative remedies.

The severity of these provisions of the Emergency Price Control Act was somewhat modified by the amendments thereto enacted by the Stabilization Extension Act of 1942, 58 Stat. 632. Instead of the short 60-day period, it was provided that a protest might be filed with the Price Administrator at any time after the issuance of a regulation or order. Further, by a new subsection added to § 204 of the Emergency Price Control Act, a court in which criminal or civil enforcement proceedings were pending was empowered to entertain an application by the defendant for leave to file directly in the Emergency Court of Appeals a complaint challenging the validity of a regulation or order which he was charged with having violated. If the enforcement court found that the objections which defendant raised against the validity of the regulation or order were made in good faith and that there was reasonable and substantial excuse for the defendant's failure to present such objections under the protest procedure, the enforcement court could grant such leave, meanwhile staying the enforcement proceedings under certain conditions. Still the enforcement court was without jurisdiction to adjudicate the validity of the regulation or order; and if the defendant failed to obtain leave of the enforcement court to litigate this issue in the Emergency Court of Appeals, then the enforcement proceedings had to go under

---

2. In Babcock v. Koepke, 9 Cir., 1949, 175 F.2d 923, the landlord was plaintiff, seeking equitable relief by way of a declaratory judgment. In May v. Maurer, 10 Cir., 1950, 185 F.2d 475, the landlord was plaintiff, seeking an injunction and declaratory judgment. Cf. Gates v. Woods, 4 Cir., 1948, 169 F.2d 440; Woods v. Durr, 3 Cir., 1949, 176 F.2d 273.

the assumption that the regulation or order in question was valid.

But the Emergency Price Control Act of 1942, as amended, terminated on June 30, 1947. It was succeeded, as to rent control, by the Housing and Rent Act of 1947. There was no provision in the latter Act, similar to that contained in § 204(d) of the Emergency Price Control Act of 1942, which would deprive courts, other than the Emergency Court of Appeals, of jurisdiction to consider the validity and to enjoin the enforcement of regulations or orders issued under the Housing and Rent Act. See Talbot v. Woods, Em.App., 1947, 164 F.2d 493; Henry v. Woods, Em. App., 1951, 186 F.2d 312; Dauksewicz v. United States, 1 Cir., 1951, 194 F.2d 52, 54. Therefore, in enforcement suits under the Housing and Rent Act, district courts had jurisdiction to adjudicate a defense of invalidity of a regulation or order purporting to establish a maximum rent. We are not aware of any general judge-made doctrine that a defendant in an enforcement suit, charged with having violated an administrative regulation or order, is precluded from setting up the defense that the regulation or order is invalid, merely because the defendant had failed to make use of an available administrative procedure by which he might have obtained administrative action to set aside the regulation or order. Nothing in the Housing and Rent Act of 1947 so provided; nor have we been able to find anything in the Controlled Housing Rent Regulation (14 F.R. 5711), or in the Housing Expediter's Rent Procedural Regulation 2 (14 F.R. 1783), purporting so to provide.

In Dauksewicz v. United States, supra, we distinguished the situation where a maximum rent had by regulation or order once been validly established and where, in the view of the landlord, supervening events had occurred which would entitle him to an increase of his maximum rent under the statutory or regulatory standards. In such a situation the landlord cannot take upon himself to increase the rent to a figure he thinks proper, and then, in defense to a suit for restitution of overcharges, offer to prove in the enforcement court the existence of a set of facts under which he would have been entitled to an increase had he applied for it under the applicable administrative procedures. This is not, we explained, an instance of the familiar doctrine of courts of equity that a petitioner will be denied extraordinary equitable relief when he has failed to exhaust an available administrative remedy by which he might obtain the same relief. In this connection we said, 194 F.2d at page 55–56:

"The point is, however, that once a maximum rent has been established which was initially valid, the rent regulation provides, and lawfully provides, that the landlord may not charge more than that maximum rent without having applied for an upward adjustment and presented to the Housing Expediter the special facts of his case upon which he bases his claim to a higher maximum. If he does make such an overcharge without petitioning for an adjustment he violates the regulation, and so the Act, and becomes irretrievably liable to make restitution, though the facts would have entitled him to a higher maximum rent had he applied for it." [3]

In the present case, plaintiff's request for admissions contains the recital that there was some order issued by the area rent director on January 8, 1951, determining that on the freeze date for the particular defense-rental area, March 1, 1942, the premises in question were being rented for $30 a month; that under the rent regulation issued pursuant to the Emergency Price Control Act of 1942, $30 per month thus became the established maximum rent for the premises; that the maximum rent thus established was carried over automatically and became the starting maximum rent under § 204(b) of the Housing and Rent Act of 1947, when that Act superseded the Emergency Price Control Act on July 1, 1947. This asserted fact that the prem-

3. Our holding in the Dauksewicz case seems to have been misunderstood and misapplied in United States v. Carter, 10 Cir., 1952, 197 F.2d 903.

ises were being rented on March 1, 1942, at $30 a month is in contradiction of the allegation in defendant's answer that no maximum rent was established under the Emergency Price Control Act of 1942 for the reason that the premises at that time were being occupied by the owner himself.

We infer that this order of January 8, 1951, was issued by the area rent director under § 825.5(d) of the regulation, 14 F.R. 5718, providing that if the maximum rent or any other fact necessary to the determination of the maximum rent is in dispute between the landlord and the tenant, or is in doubt, or is not known, the Housing Expediter at any time on his own initiative "may enter an order fixing the maximum rent by determining such fact," which order "shall be effective to establish the maximum rent from July 1, 1947, or the date of first renting after July 1, 1947, whichever is applicable."

It was the holding of the district court that, since the landlord did not apply to the higher officials in the Office of the Housing Expediter for review of this order of January 8, 1951, as permitted by the procedural regulation, he was thereby precluded from challenging the validity of the rent director's order, determining that when the landlord leased the premises on December 1, 1948, they were already subject to a maximum rent of $30 per month. But for the reason already indicated, we think the landlord was entitled in the district court to defend the enforcement suit on the ground that the order of January 8, 1951, was invalid, either because it was issued without affording procedural due process to the landlord, or because it was otherwise contrary to law, or arbitrary and capricious as being made without a basis of substantial evidence to support it. And even if, on December 1, 1948, the established maximum rental of the premises for dwelling purposes was $30 a month, there is the further problem, above alluded to, namely, whether it could be said that the unapportioned $50 per month which the landlord claimed to have exacted under the double-barreled rental agreement entered into on December 1, 1948, was in excess of the maximum rent applicable to the housing

tenant, when it included an uncontrolled rental charge to the trucking partnership for a portion of the premises devoted to commercial purposes.

Plaintiff's request for admissions also refers to another order issued by the area rent director on April 11, 1951, determining that the maximum rent was $31.80 per month effective April 13, 1949. It does not appear what was the occasion for this order, nor under what provision of the rent regulation it purported to have been issued.

We have been unable to obtain a clear picture of the factual situation from examination of the brief but confusing record in this case. On various hypotheses of fact, we have sought to thread our way through the many complex changes in the statute and the regulation thereunder, with results not altogether illuminating. One thing we are clear about, that on the record before us it could not be said as a matter of law that the plaintiff was entitled to the summary judgment which was entered by the district court.

Since the case will have to go back for further proceedings, we call attention to certain provisions of Pub.L. 429, 82d Cong., cited as the Defense Production Act Amendments of 1952, which became law June 30, 1952. Without amending specific sections of the Housing and Rent Act of 1947, § 113 of Pub.L. 429 amended § 407(a) of the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2107(a), so as to provide that regulations or orders relating to rent controls under the Housing and Rent Act of 1947, as well as regulations or orders relating to price controls under the Defense Production Act, might be protested within six months after the effective date of the issuance of the same. Further, § 113 of Pub.L. 429 amended § 408 of the Defense Production Act so as to permit any person aggrieved by denial of his protest (including a landlord who had protested against a rent regulation or order) to file a complaint in the Emergency Court of Appeals praying that the regulation or order protested be set aside. The Emergency Court of Appeals is now given exclusive jurisdiction to determine the validity of regulations or orders relating to rent control, as

384

well as orders relating to price control; and it is provided that no other court shall have jurisdiction or power to consider the validity of any such regulation or order. It may be that when this case gets back to the district court, that court will no longer have jurisdiction to adjudicate any defense based upon the alleged invalidity of the orders of the area rent director above mentioned, but that under § 408(d) of the Defense Production Act, as amended by Pub. L. 429, the defendant will have to apply to the district court for leave to file a complaint in the Emergency Court of Appeals in case he wants to attack the validity of any regulation or order issued by the area rent director. On the other hand, it may be that these provisions of Pub.L. 429 should be held inapplicable to review of the validity of rent regulations or orders issued prior to the date on which that Act became law. We do not undertake at this time to pass upon the effect of Pub.L. 429 in the above respects.

The judgment of the District Court is vacated and the case is remanded to that Court for further proceedings not inconsistent with this opinion.